**SPOKANE DRY GOODS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 103916. Promulgated February 28, 1941.

*Roger L. Shidler, Esq.,* for the petitioner.
*E. C. Adams, Esq.,* for the respondent.

#### OPINION.

OPPER: Respondent determined a deficiency of $479.75 in petitioner's income tax for the calendar year 1938. Only $236.19 of such deficiency is in controversy in this proceeding and represents that

---

part of the deficiency which results from the disallowance of a dividends paid credit in the amount of $35,830.30. This disallowance is the only error assigned by petitioner. The facts are stipulated and are hereby found accordingly.

The petitioner, Spokane Dry Goods Co., is a Washington corporation, with its principal place of business at Spokane, Washington, and its income tax return for the calendar year ended December 31, 1938, was filed in the district of Washington. The par value of the common stock of the Spokane Dry Goods Co. outstanding at all times herein mentioned was $1,000,000.

During the calendar year 1938 the petitioner kept its books on the accrual basis, and made its income tax return for that year on the accrual basis.

The board of directors of petitioner, at a meeting held on December 22, 1936, declared a dividend on petitioner's common stock in the total sum of $120,000, by adoption of the following resolution:

WHEREAS this Corporation has a substantial surplus from earnings and is able to pay a dividend;

THEREFORE BE IT RESOLVED that a dividend of twelve per cent of the capital stock of the corporation be paid to stockholders of record December 28, 1936, which dividend shall be paid before December 31, 1936, either in cash or at the option of such stockholders in notes of the Corporation, which notes shall be payable on December 31, 1937, or before at the option of the Company, and bear interest at five per cent per annum until paid.

Of the total dividend declared in the amount of $120,000, $94,826 was paid with promissory notes of petitioner, pursuant to election by stockholders.

The promissory notes in the total sum of $94,826 delivered to stockholders on account of such dividend had an actual value at the time of delivery equal to their face value.

The petitioner in its income tax return for the calendar year 1936 claimed a dividends paid credit because of the above mentioned dividend in the sum of $120,000 declared on its common stock, of which the sum of $94,826 was on account of such promissory notes delivered to the common stockholders.

In the calendar year 1938 the petitioner paid to the holders of such promissory notes received by stockholders in payment of dividends the sum of $35,830.30, which sum represented the remaining principal balance of the notes issued in 1936.

The only question involved is whether petitioner is entitled to a "dividends paid credit" in the year 1938 on account of the payment of $35,830.30 to its stockholders to redeem its promissory notes delivered to such stockholders in 1936 in payment of dividends. Petitioner contends that it is entitled to the credit in question under the

provisions of section 27 (a) (4) of the Revenue Act of 1938,[1] notwithstanding it took a dividends paid credit in its income tax return for 1936 on account of dividends paid in that year in its obligations, the payment of the remaining principal of which in 1938 is the basis of the credit now claimed.

Although the present situation would fall within the language of section 27 (a) (4), if that were all there was to the matter, it is also described by section 27 (e),[2] which so far as material here is the same as section 27 (d) of the Revenue Act of 1936. In such circumstances the general provision must give way to the particular. *Missouri* v. *Ross*, 299 U. S. 72; *Ginsburg & Sons, Inc.* v. *Popkin*, 285 U. S. 204; *United States* v. *Chase*, 135 U. S. 255; *McKee* v. *United States*, 164 U. S. 287; *Townsend* v. *Little*, 109 U. S. 504, 512. Thus, section 27 (e), dealing specifically with the redemption of obligations issued in payment of dividends, prevails over the provisions of section 27 (a) (4), which deals with the whole class of corporate obligations. The apparently applicable sections do not need to be in conflict for this rule to apply. *McKee* v. *United States, supra*. Where Congress sets up a specific method of dealing with a narrow class of cases, as it has here, we think that treatment must be regarded as exclusive and that in the absence of indications to the contrary the general language of section 27 (a) (4), "although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *Ginsburg & Sons, Inc.* v. *Popkin, supra*.

When to this it is added that we should not presume without unmistakable and definitive language that Congress intended to grant a double deduction for the same transaction, *Ilfeld Co.* v.

---

[1] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

(a) DEFINITION IN GENERAL.—As used in this title with respect to any taxable year the term "dividends paid credit" means the sum of:

\* \* \* \* \* \*

(4) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind, if such amounts are reasonable with respect to the size and terms of such indebtedness. As used in this paragraph the term "indebtedness" means only an indebtedness of the corporation existing at the close of business on December 31, 1937, and evidenced by a bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust, issued by the corporation and in existence at the close of business on December 31, 1937, or by a bill of exchange accepted by the corporation prior to, and in existence at, the close of business on such date. Where the indebtedness is for a principal sum, with interest, no credit shall be allowed under this paragraph for amounts used or set aside to pay such interest.

[2] (e) DIVIDENDS IN OBLIGATIONS OF THE CORPORATION.—If a dividend is paid in obligations of the corporation, the amount with respect thereto which shall be used in computing the basic surtax credit shall be the face value of the obligations, or their fair market value at the time of the payment, whichever is the lower. If the fair market value of any such dividend paid in any taxable year of the corporation beginning after December 31, 1935, is lower than the face value, then when the obligation is redeemed by the corporation in a taxable year of the corporation beginning after December 31, 1937, the excess of the amount for which redeemed over the fair market value at the time of the dividend payment (to the extent not allowable as a deduction in computing net income for any taxable year) shall be treated as a dividend paid in the taxable year in which the redemption occurs.

*Hernandez*, 292 U. S. 62, and that no reason is apparent in the legislative history or suggested by petitioner why a particular class of taxpayers should have been singled out by Congress for this especially favorable treatment, we are unable to reach the conclusion that the credit to which petitioner lays claim is available to it.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

HILL, dissenting: I do not agree with the conclusion in the opinion of the majority. Two premises are assumed in support of such conclusion. They are (1) that section 27 (e) of the Revenue Act of 1938 specifically prescribes what dividends paid credits are allowable in respect of dividends paid in a corporation's obligations and that thereby the dividends paid credit provided by section 27 (a) (4) of such act is excluded if the indebtedness involved represents a dividend obligation; and (2) that it should not be presumed that Congress intended to grant a double deduction for the same transaction in the absence of unmistakable and definitive language evidencing such intent.

It is my conviction that the first premise is wrong. The second premise is sound in the abstract but, in my opinion, the situation here does not invoke its application.

I see nothing in the language or the subject treated in section 27 (e) to indicate that the prevention of duplication of dividends paid credit was involved in the purposes of such enactment. It seems clear to me that the objectives of such enactment are merely to provide when and in what amounts dividends paid credits shall be allowed for dividends paid, such dividends being paid in the corporation's obligations (1) when such dividends are so paid and, (2) when the dividend obligations are redeemed, if the amount for which they are redeemed exceeds their fair market value at the time of the dividend payment. The scope of the provisions of section 27 (e) is confined to the one purpose of assuring to the taxpayer credit or credits for dividends paid to the extent of the amount for which the obligations are redeemed. The specific and plain language used to express this limited purpose leaves no doubt of its meaning. Neither section 27 (e), *supra*, nor 27 (d) of the Revenue Act of 1936 relates to dividends paid credit provided by section 27 (a) (4), *supra*, on account of money used or irrevocably set aside to pay or retire indebtedness. Neither section 27 (e) nor section 27 (d) purports to exclude the application of the provisions of section 27 (a) (4) where the indebtedness involved represents a dividend obligation. Neither of such sections touches the subject of duplicate credits,

either specifically or by implication. The Revenue Act of 1936 has no provisions comparable to those of section 27 (a) (4) and consequently section 27 (d) thereof was enacted without reference to such provisions. Section 27 (e), *supra*, is in essence merely a reenactment of such section 27 (d). Section 26 (c) (1) and (2) of the Revenue Act of 1936 provides credits to corporations for purposes of surtax in the case of contracts restricting payment of dividends and contracts requiring earnings and profits to be paid or irrevocably set aside within the taxable year for the discharge of a debt. Section 26 (c) (3) of that act prohibited the allowance of double credits in respect of such contracts. The provisions of such section 26 (c) (1), (2), and (3) were not carried forward to or reenacted in the Revenue Act of 1938 and no provisions comparable thereto appear in the latter act.

The provisions of section 27 (a) (4) first appeared in the 1938 Act. Its language is all-embracive and unambiguous in providing dividends paid credit for payment of indebtedness as therein defined. By its terms it applies to such "indebtedness of any kind." There is no exception. Section 27 (a) (4), on the one hand, and section 27 (e) and section 27 (d), *supra*, on the other, treat of and specifically provide for different, noninterdependent, and nonexclusive sources of dividends paid credit. There is nothing in the language of either of such sections or elsewhere in the Revenue Act of 1938 to indicate that if a dividends paid credit is taken for dividends paid in the corporation's obligations a dividends paid credit may not also be taken as provided by section 27 (a) (4) when such obligations are paid, provided such obligations constitute indebtedness as defined in section 27 (a) (4). The obligations paid in 1938 by petitioner for which it claims a dividends paid credit in this proceeding constitute such indebtedness.

The credit in question is affirmatively authorized by unambiguous provisions of statute. The lack of ambiguity in the statute forecloses the privilege, assumed in the opinion of the majority, to construe it.

"It is elementary that the province of construction lies in the domain of ambiguity, and that the use by a legislative body of words having definite meanings creates no ambiguity, and that such words are to be taken and understood in their plain ordinary and popular sense." *Helvering* v. *Nebraska Bridge Supply & Lumber Co.*, 115 Fed. (2d) 290.

Furthermore, it is doubtful whether the charge of duplicate credit can be sustained in respect of the credit here in question. The credit in 1936 for dividends paid in petitioner's obligations was applied against income not for the purpose of normal tax, but for the purpose

of surtax on undistributed profits under section 14 of the Revenue Act of 1936. There was no such credit in respect of normal tax. The Revenue Act of 1938 has no provision for tax corresponding to the tax imposed by section 14 of the 1936 Act. The credit in question here applies only to the tax provided by section 13 of the Revenue Act of 1938. It does not apply to any other tax-levying provision. The charge of duplicate credit must, therefore, apply only in respect of the tax levied under section 13 of that act. That section does not levy a surtax but levies a tax of 19 percent on the adjusted net income of corporations generally. If a corporation has received dividends in the taxable year from domestic corporations it gets a credit against tax of 16½ percent of 85 percent of such dividends. If it has a dividends paid credit consisting of one or more of the items constituting such credit as provided in section 27, it gets a credit against tax of 2½ percent of such dividends paid credit.

A comparison of the Revenue Acts of 1936 and 1938 discloses that not only are the credits allowed corporations under sections 26 and 27 of the 1936 act widely variant in scope and kind from credits provided in sections 26 and 27 of the 1938 act, but they are applied differently and under radically different schemes or plans of taxation.

The Revenue Act of 1936 levied both a normal and a surtax on corporations generally. The rate of the normal tax levied was graduated through four brackets from 8 percent to 15 percent on the normal tax net income. The rate of the surtax levy was graduated through five brackets from 7 percent to 27 percent on the undistributed net income. The credit which petitioner received for dividends paid in 1936 was a deduction from income for the computation of surtax only. It had no application to the normal tax levied. The credit that petitioner claims in this proceeding would, if allowed, be applied not as a deduction from income or in respect of a tax levied on undistributed profits, but to the extent of 2½ percent thereof as a credit against a tax on the adjusted net income of corporations generally, regardless of whether any of such income was undistributed.

The two credits—the one received in 1936 and the one now claimed—were not credits against the same thing. One was against income, the other against tax. They were not the same kind of credits. One was for dividends paid and the other for indebtedness paid. They were not credits in respect of the same kind of tax or under the same or a comparable scheme of taxation. One credit was applied to the extent of its full amount, the other to the extent of only 2½ percent of its amount. The credit in 1936 may have eliminated a surtax entirely or it may have reduced the rate of surtax from 27 percent to 7 percent or to some intermediate rate, while the credit claimed in this proceeding would reduce a normal tax lexy by the amount of 2½ percent of such credit.

An attempt to detail all of the variances between the two credits which would be revealed in their application under the respective revenue acts would present a problem in permutations.

Who, then, can say that the credit claimed by petitioner in this proceeding duplicates the dividends paid credit received in 1936? If there is a duplication, how can the extent of it be calculated?

However, whether or not the allowance of the credit claimed here by petitioner would result in duplicating a credit which it took for the year 1936, it appears to me clear that the Congress intended to and did expressly grant such credit as is here claimed. The language providing such credit is unambiguous and, without reading something into the statute as it stands or imputing to it a more restricted meaning than its language warrants, I think it must be concluded that petitioner's claim of credit is authorized and should be allowed.

BLACK and HARRON agree with this dissent.