Noel Tancred ESCOFIL

v.

**COMMISSIONER OF INTERNAL
REVENUE.**

Civ. A. No. 73–856.

United States District Court,
E. D. Pennsylvania.

May 16, 1974.

Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

Noel Tancred Escofil, pro se.

## OPINION

LUONGO, District Judge.

Plaintiff Noel ·Tancred Escofil instituted this action to challenge the constitutionality of certain taxing provisions of the Social Security Act.[1] Before the court is a motion by defendant Commissioner of Internal Revenue to dismiss pursuant to Rule 12(b), F.R.Civ.P., for lack of jurisdiction and failure to state a claim on which relief can be granted.

Escofil's *pro se* initial pleading in this case consisted of the following:

"The Social Security Act is unconstitutional in that it prohibits me to freely exercise my religion in regards to Matt. 6:34.

"And those tax laws whereby the Commissioner of Internal Revenue et al seek to deny my talents (copyrights) under the guise of disallowable loss in order to discriminate against me by making me pay my taxes a second time: are unconstitutional. In that said laws, rules and regulations as in Ernest L. Rink, 51 T.C. 746, 753 (1969); Ellis M. Brydia, T.C. Memo. 1970–147, etc. prohibit me to freely exercise my religion in regards to Matt. 25:16, 20 and 21; also James 1:16 & 17.

"Wherefore it is hereby petitioned that the Presiding Judge convene a three Judge Panel to try these Constitutional matters, please."

■■ By order dated June 7, 1973, I granted defendant's motion for a more definite statement. F.R.Civ.P. 12(e). Escofil's amended complaint, filed on July 24, 1973, also strains F.R.Civ.P. 8(a), which provides for a "short and plain statement of the claim . . . [and] the grounds upon which the court's jurisdiction depends" but, in light of what has been thus far filed, it would be futile to require that the pleadings be further amended. The general policy of the Federal Rules is that pleadings are to be liberally construed so as to reach the merits wherever possible. Conley v. Gibson, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). *Pro se* complaints are generally held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Applying those principles, a very liberal reading of the amended complaint reveals the substance of Escofil's grievance.

Escofil's complaint is two-tiered. His basic grievance is that the Congress, by compelling him to participate in the Social Security System by requiring that social security taxes be withheld from his wages, infringes his First Amendment right to freely exercise religion. The religious tenet with which the Social Security Act allegedly collides, according to the amended complaint, is embodied in Matthew 6:34:

"Take therefore no thought for the morrow; for the morrow shall take thought for the things of itself. Sufficient unto the day is the evil thereof."

Congress has recognized the possible conflict of the Social Security Act with certain religious beliefs. 26 U.S.C. §

---

1. 42 U.S.C. § 301 et seq. The Federal Old-Age, Survivors and Disability Insurance Benefits (OASDI) program with which Es-cofil is particularly concerned is found at 42 U.S.C. § 401 et seq.

1402(h),[2] enacted in 1965, grants self-employed persons who are members of "recognized religious sects" the opportunity to apply for an exemption from Social Security if the program offends their religious beliefs. Because of the existence of § 1402(h), Escofil, who is not self-employed, makes what is really an equal protection challenge, arguing that Congress has unlawfully discriminated between those who are self-employed and those who are employed by others, by extending to one class the right to apply for a religious exemption while denying it to the other.

■ Escofil has requested that a three-judge court be convened to adjudicate his constitutional claim. 28 U.S.C. § 2282. A three-judge court is not required each time the constitutionality of a statute is "drawn in question." Garment Workers v. Donnelly Co., 304 U.S. 243, 250, 58 S.Ct. 875, 82 L.Ed. 1316 (1938). Historically, the three-judge court statutes were enacted to prevent a statutory scheme from being immobilized as a result of the decision by one judge to enjoin its enforcement. In this case, as a practical matter, even a decision in Escofil's favor would not "interdict the operation of a statutory scheme." Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The ruling in this case would affect Escofil only. Social Security taxes would continue to be deducted from the wages of other employees, at least pending ultimate review. Under these circumstances, Escofil is really seeking declaratory, rather than injunctive relief, and it is unnecessary to convene a three judge panel. Kennedy v. Mendoza-

Martinez, 372 U.S. 144, 153, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Flemming v. Nestor, *supra*; Garment Workers v. Donnelly Co., *supra*.

■ Turning to the merits of Escofil's claim, there is no doubt that Congress has wide latitude to enact Social Security laws which subject employees and self-employed persons to different treatment. In the trilogy of cases upholding the constitutionality of various facets of the Social Security Act [Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937); Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937); Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937)] the Supreme Court dealt with plaintiffs' attacks that the Social Security Act and state statutory schemes created in conjunction with it were arbitrary and unconstitutional because of the legislative determination to tax one group of employers/employees while exempting others. In rejecting these claims, the Court wrote in *Carmichael:* [3]

"It is inherent in the exercise of power to tax that a state be free to select the subjects of taxation and to grant exemptions . . . . This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation . . . . Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes . . . and that meted out to others . . . . *It*

2. 26 U.S.C. § 1402(h) provides in part:
"(1) Any individual may file an application . . . for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement . . . . "

3. The three opinions were issued simultaneously and each cited to the others liberally. Thus, although *Helvering* dealt with the constitutionality of Titles II and VIII of the Social Security Act itself, while *Carmichael* involved the Alabama unemployment compensation scheme set up in connection with the Unemployment Trust Fund of the Federal Social Security Act, the analysis of each opinion is equally applicable in the other cases.

*would hardly be contended that the state, in order to tax payrolls, is bound to assume the administrative cost and burden of taxing all employers having a single employee.* But if for that or any other reason it may exempt some, whether it should draw the line at one, three, or seven, is peculiarly a question for legislative decision." 301 U.S. at 509, 511 (Emphasis added)

The logic of these cases quite obviously permits Congress to treat employees and self-employed persons differently, and the legislative history of the Social Security Act reveals that Congress has done so since the inception of Social Security. The original Social Security scheme enacted by Congress in 1935 made no provision for the self-employed. Not until the Social Security Amendments of 1950 did certain categories of self-employed persons receive coverage. *See* 1950 U.S.Code Cong.Serv. p. 3287.

■ Escofil's case, however, poses a slightly different problem. Where the distinction between self-employed and employees is drawn in a context involving fundamental rights such as the free exercise of religion, Congress' latitude to legislate is circumscribed. The government has the burden of showing some greater justification for its legislative scheme than would otherwise be required. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Moreover, even in the absence of § 1402(h), the question would remain as to whether the government's interest in administering the Social Security scheme could be allowed to override the petitioner's right to exercise his religion. *Compare* Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) *with* Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961).

■ In this case, however, I am not free to reach these issues. Escofil has twice been before the Court of Appeals for this Circuit, seeking to have adverse Tax Court decisions overruled. Both times the Court of Appeals affirmed the Tax Court. While neither court explicitly discussed Escofil's claims based on his religious scruples, a review of the prior litigation satisfies me that the issue was before the Court of Appeals, and that Court's rejection of Escofil's arguments is binding on me.

In 1971 Escofil appeared before the Tax Court to contest a determination by the IRS that his income taxes were deficient in 1966, 1967 and 1968. 30 T.C.M. 578 (1971). These deficiencies resulted in pertinent part because Escofil had expressed his religious scruples by taking a credit to offset Social Security taxes withheld from his pay check. On this point, the Tax Court wrote, 30 T.C.M. at 579:

"For each of the taxable years in question, petitioner claimed a credit against his income taxes for the amount of FICA taxes withheld from his wages. Since petitioner does not appear to be entitled under section 6413(c)(1) (dealing with taxpayers having two or more employers) to any special refund of FICA taxes withheld, section 31(b) (dealing with credits for such refunds) is inapplicable. There is no other provision of the Internal Revenue Code permitting any credit for such taxes. The constitutionality of the taxing provisions of the Social Security Act is beyond question." See William E. Palmer, *supra*, 52 T.C. 310, at p. 313.

While the Tax Court made no explicit mention of Escofil's claims based on his religious beliefs, the reference to "the constitutionality of the taxing provisions of the Social Security Act" gives rise to the inference that the Court was aware of them and dismissed them out of hand. This inference is strengthened by the Court's citation to the *Palmer* case. In *Palmer*, the Tax Court upheld 26 U.S.C. § 1402(h) against the claim that it was unconstitutional because it only permitted exemptions to self-employed persons who were members of "recognized religious groups." The reference to *Palmer*

is explicable in Escofil's case only if the Tax Court was aware that § 1402(h) was again being challenged. What issues were before the Tax Court in the first case assumes particular importance because in the second case, while the Tax Court gave Escofil "another bite at the apple," it relied on the doctrine of collateral estoppel rather than reconsider the merits of his claim. 32 T.C.M. 937 (1973).

It is logical to assume that if Escofil presented his constitutional arguments to the Tax Court, he would also have done so in the Court of Appeals. The Third Circuit's opinion in the first Escofil case, 464 F.2d 358 (3d Cir. 1971), cert. denied, 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 694, reh. denied, 410 U.S. 948, 93 S.Ct. 1382, 35 L.Ed.2d 616 (1973), contains no mention of any constitutional issue, leaving open the possibility that the constitutional questions were not before the Court. However, such a conclusion would be untenable in the second case. The briefs on both sides make it clear that an alleged violation of the free exercise clause was involved. The government's brief stated:

"This is taxpayer's second journey to this court in an attempt to deduct anticipated earnings as a loss and to take a credit for the F.I.C.A. taxes withheld from his wages on the ground that the Social Security Act violates his freedom of religion rights under the First Amendment." Brief of Appellee at 6.

Escofil's brief contained repeated, decipherable references to the gist of his grievance. For example, at one point in his brief, he wrote that "the Social Security Act is unconstitutional in that 26 U.S.C. § 1402(h) discriminates against appellant as an employee conscientiously opposed to social security and all other forms of insurance." Brief of Appellant at 3. Subsequently, in a section which he designated as his appendix, he wrote:

"The court below was unable to refute Matthew 6:34 and Matthew 25:16, 20 and 21, etc. Said Court has no jurisdiction to rule on the unconstitutionality of the Social Security Act. Said Act is unconstitutional in that 26 § 1402 discriminates against Appellant as an employee conscientiously opposed to social security and all other forms of insurance; whereas Matt. 6:34 speaks to employee as well as the self-employed."

With the constitutional issue clearly before it, the Court of Appeals' recent judgment order, 493 F.2d 1400 (1974), affirming the Tax Court for a second time, is decisive:

"*After consideration of all the contentions of the appellant* and the previous case involving the same issue in Escofil v. Commissioner, 464 F.2d 358 (3d Cir. 1971), and being persuaded that collateral estoppel is appropriate and that alternatively there was no merit to the substantive issues raised, it is ADJUDGED and ORDERED that the decision of the Tax Court be and same is affirmed." (Emphasis added)

In the light of previous litigation, Escofil's arguments may not be considered as if they posed issues of first impression. I view the Court of Appeals' decisions as controlling in this matter.[4] The government's motion to dismiss will be granted.

---

4. Escofil has also argued, in extremely obscure terms, that a decision by the Internal Revenue Service has infringed upon "his free exercise of copyrights." In his previous litigation with the Tax Court, Escofil was objecting to an IRS decision that he could not deduct anticipated earnings from certain copyrighted materials which were seized by his landlord when he failed to pay his rent. The Tax Court rejected this argument, and the Court of Appeals affirmed the Tax Court's judgment. Because I believe that Escofil's copyright argument remains unchanged, the Court of Appeals' decision is controlling.